13:12:40

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


JORDAN STEIN, individually  )
and on behalf of others     )
similarly situated,         )
                            )
            Plaintiffs,     )
                            ) C.A. No. 22-314(MN)
v.                          )
                            )
CLARIFAI, INC.,             )
                            )
            Defendant.      )


                    Monday, November 21, 2022
                    2:30 p.m.
                    Teleconference

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


            COOCH and TAYLOR, P.A.
            BY:  CARMELLA P. KEENER, ESQ.

            -and-

            EDELSON LLC
            BY:  ALEXANDER G. TIEVSKY, ESQ.
            BY:  SCHUYLER UFKES, ESQ.

            -and-

            KEOGH LAW, LTD.
            BY:  GREGG M. BARBAKOFF, ESQ.
            BY:  THEODORE H. KUYPER, ESQ.

                    Counsel for the Plaintiffs

APPEARANCES CONTINUED:

                CONNOLLY GALLAGHER LLP
                BY:  LAUREN PATRICE DeLUCA, ESQ.

                -and-

                COOLEY LLP
                BY:  WHITTY SOMVICHIAN, ESQ.
                BY:  DARINA SHTRAKHMAN, ESQ.

                        Counsel for the Defendant


                    _ _ _ _ _ _ _ _ _


                THE COURT:  Good afternoon, counsel.  Who is
there, please?

                MS. KEENER:  Good afternoon, Your Honor.  May it
please the Court, Carmella Keener from Cooch & Taylor on
behalf of the plaintiffs.  Also on the line are my
co-counsel, Theodore Kuyper and Gregg Barbakoff from Keogh
Law.  And from Edelson PC, Schuyler Ufkes and Alexander
Tievsky.  Mr. Tievsky is admitted pro hac vice and will
argue today on behalf of the plaintiffs.

                THE COURT:  All right.  Thank you.

                MS. DeLUCA:  Good afternoon, Your Honor.  This
is Lauren DeLuca from Connolly Gallagher for defendant
Clarifai.  With me on the line are my co-counsel from Cooley
LLP, Whitty Somvichian and Darina Shtrakhman.  They will be

14:34:09 1    presenting.  They are also admitted pro hac vice.  We have

14:34:12 2    another member of Cooley who will be listening, Lynn Young,

14:34:16 3    and three representatives from Clarifai are present as well,

14:34:20 4    Matt Zeiler, Alicia Bricken and Atul Sahal.

14:34:25 5         THE COURT:  All right.  Good afternoon to all of

14:34:26 6    you.  All right.  So I have defendant's motion to dismiss

14:34:32 7    the First Amended Complaint before me and we have read the

14:34:38 8    papers and the cases including the recently submitted case,

14:34:42 9    but if you have anything else you wanted to add, this is

14:34:46 10   your chance.  I'll hear from defendants first.

14:34:50 11        MR. SOMVICHIAN:  Good afternoon, Your Honor.

14:34:52 12   This is Whitty Somvichian with Cooley.  Just to kind of give

14:34:59 13   you a little bit of a roadmap, I will address the

14:35:02 14   extraterritoriality issues I'll start there.  My colleague,

14:35:08 15   Darina Shtrakhman will address the other 12(b)(6) arguments

14:35:12 16   related to the BIPA action.

14:35:13 17        THE COURT:  If we don't get past

14:35:15 18   extraterritoriality, is the other stuff important?

14:35:19 19        MR. SOMVICHIAN:  It is not.  The extra

14:35:21 20   territorial issues will be completely dispositive, Your

14:35:25 21   Honor, and that's why we thought we ought to start there

14:35:28 22   because that could obviate the remainder of the issues.

14:35:31 23        THE COURT:  Let's start there.  And what we'll

14:35:35 24   do is you can complete your presentation, then I will hear

14:35:38 25   from the plaintiffs on that issue, and then we'll move to

the other 12(b)(6) issues.

MR. SOMVICHIAN:  That sounds good.  Thank you, Your Honor.

Let me just first start with one issue that I don't think will take long, but it's worth noting.  There is some effort by the plaintiffs to dispute whether the BIPA statute does or does not have extraterritorial application and whether it was intended by the Illinois legislature to reach outside of Illinois.  The overwhelming weight of the case law, Your Honor, confirms that it was not intended to have extraterritorial application.  That is confirmed, in fact, by several of the plaintiffs' own cited authorities, including the case that they submitted as a supplemental authority, *Mahmood v. Berbix*.  Just to quote that case, on page 4 of the Westlaw decision it said, "Indeed because BIPA does not expressly intend to operate extraterritorially, the alleged BIPA violations must have taken place in Illinois."  So that's the plaintiffs' own case.  It confirms the question that we're confronted with today which is did the alleged violations occur in Illinois and under the *Avery* test the question is whether the acts constituting the alleged violation occurred primarily and substantially in this state.

The easiest way to see, Your Honor, that the allegations here do not meet that standard and that the acts

14:37:25 1   Clarifai is alleged to have undertaken have no connection to

14:37:30 2   Illinois is really to look at the plaintiffs' own cases

14:37:34 3   because there really is a stark contrast to cases that have

14:37:38 4   been allowed to proceed and what we have here which is a

14:37:41 5   real outlier.

14:37:42 6          So if you look at the Rivera case against

14:37:47 7   Google, the Patel case against Facebook, the Monroy case

14:37:52 8   against Shutterfly, in each one of those cases, there was

14:37:56 9   direct interaction between the defendant and Illinois

14:38:00 10  residents, whether that was through the defendant's

14:38:03 11  interactive websites or devices and software that they made

14:38:07 12  available to Illinois residents, there was direct

14:38:12 13  interaction that led to Illinois residents uploading data

14:38:16 14  directly to the defendants.

14:38:17 15         And in at least the Rivera and Monroy cases,

14:38:21 16  there was also allegations on the face of the complaint that

14:38:25 17  that initial transmission of data was accompanied by

14:38:28 18  information that would have shown the defendant that they

14:38:32 19  were, in fact, interacting with Illinois residents.  And

14:38:35 20  that was through the inclusion of an IP address which was a

14:38:39 21  proxy for determining location.

14:38:44 22         There are no similar allegations to that here,

14:38:47 23  Your Honor.  There is no allegation that Clarifai had any

14:38:50 24  direct interaction with the plaintiffs, or any direct

14:38:56 25  interaction with any Illinois resident.  There is no

14:38:59 1   allegation that Clarifai had any ability once it received

14:39:06 2   the database that it allegedly received from OKCupid.  There

14:39:11 3   is no allegation that Clarifai had any ability to know which

14:39:14 4   files may or may not have originated from an Illinois

14:39:18 5   resident.  So those facts are in stark contrast to the cases

14:39:23 6   that plaintiffs have relied on to try to get past this

14:39:28 7   extraterritoriality hurdle.

14:39:30 8            There is another series of cases that provide an

14:39:33 9   important contrast.  For example, the Clearview case, this

14:39:40 10  is cited at pages 8 and 10 of the plaintiffs' opposition.

14:39:46 11  In that case the plaintiffs were able to overcome an

14:39:51 12  extraterritoriality count.  Their complaint alleged, and I'm

14:39:55 13  quoting now from page 1122 of the decision, the complaint in

14:40:02 14  that case alleged that "defendants trespassed on the

14:40:06 15  Illinois subclass members' private domain in Illinois,"

14:40:11 16  first, and then the complaint in that case also went on to

14:40:15 17  say that, "defendants have contracted with hundreds of

14:40:20 18  Illinois entities, both public and private."

14:40:23 19            So in that case, again, there was direct

14:40:26 20  interaction between the defendant and Illinois residents and

14:40:31 21  business dealings in Illinois that led to profits generated

14:40:37 22  from the alleged biometric information at issue.  There were

14:40:40 23  other cases that are similar, *Advanced v. Microsoft* case

14:40:45 24  cited at pages 5 and 8 of the plaintiffs' opposition.  A

14:40:51 25  related case, *Vance v. Amazon*, both of those also involved

14:40:57  1    complaints where the defendants were alleged to have

14:41:00  2    utilized the alleged biometric information in Illinois and

14:41:05  3    derived profits from business dealings in Illinois.

14:41:09  4            Again, Your Honor, no such allegations here.

14:41:12  5    There is no fact alleged in the complaint to suggest that

14:41:17  6    Clarifai did any kind of business in Illinois, whether it

14:41:20  7    had to do with the biometric information or not.  Certainly

14:41:24  8    no allegation that Clarifai profited from the use of

14:41:32  9    biometric information in the course of business dealings,

14:41:36 10    specifically with Illinois business entities and again,

14:41:41 11    nothing similar to the allegations that allowed the

14:41:43 12    complaints to proceed in these other matters.

14:41:47 13            The other way I would suggest, Your Honor, that

14:41:51 14    is helpful to think about how to apply the *Avery* standard

14:42:00 15    here is to look at the complaint and see what is alleged to

14:42:03 16    be the violation, number one, and number two, see if there

14:42:07 17    are fact allegations to show that those actions occurred in

14:42:11 18    Illinois.  And if you go through that exercise here, it

14:42:15 19    underscores the lack of any connection.  If you look at

14:42:18 20    paragraphs 9 and 10 of the complaint, it specifies what the

14:42:22 21    alleged violations are.  So at those paragraphs, one relates

14:42:27 22    to plaintiff Stein, the other paragraph relates to plaintiff

14:42:31 23    Goodman, but Clarifai is alleged to have "collected,

14:42:36 24    obtained, stored, possessed and profited from plaintiffs'

14:42:42 25    biometric identifiers and/or information."

14:42:46 1          So the relevant question to ask under *Avery* is

14:42:51 2  did any of those actions occur in Illinois and are there any

14:42:55 3  fact allegations in the complaint to suggest a connection

14:42:59 4  between those acts and Illinois?  And there are not, Your

14:43:05 5  Honor.  So did Clarifai collect or obtain any biometric

14:43:10 6  information in Illinois?  No fact allegations that it did

14:43:15 7  so.

14:43:16 8          Did Clarifai store or use or possess the

14:43:19 9  biometric information in Illinois?  Again, no allegations to

14:43:24 10 show that.

14:43:26 11         Did Clarifai profit from the use of biometric

14:43:29 12 information by virtue of business dealings in Illinois?

14:43:34 13 Again, no allegations to show any connection there.

14:43:37 14         So what we have here is a real outlier where the

14:43:42 15 only connection, if you can call it that, is the plaintiffs'

14:43:48 16 residence in Illinois.  And this is precisely the

14:43:51 17 circumstance that Judge Stark addressed in the *McGoveran*

14:43:55 18 case, Your Honor.  I won't belabor this because it is

14:43:59 19 addressed at length in the parties' briefs, but it's rare to

14:44:02 20 have a case that is so squarely on point in terms of both

14:44:10 21 the facts, the issues addressed, and the procedural posture

14:44:12 22 of the case.  And we have that here in the *McGoveran* matter

14:44:21 23 where again there was no allegation of any direct

14:44:23 24 interaction between the defendant and any Illinois resident

14:44:27 25 of the alleged creation of biometric information.  In that

14:44:32 1    case it was the analysis of voice recordings to generate

14:44:36 2    voiceprints.  There was no allegation that any of that

14:44:39 3    process had anything to do with Illinois.  It wasn't

14:44:43 4    conducted in Illinois.  The outputs were not stored or

14:44:48 5    possessed or used in Illinois, or there were no allegations

14:44:52 6    to that effect.

14:44:53 7            And in that circumstance, Judge Stark found that

14:44:57 8    where the only connection is the plaintiffs' residency in

14:45:01 9    Illinois, that's not enough.  And on top of that, the prior

14:45:06 10   finding in the Northern District of Illinois that there was

14:45:11 11   no jurisdiction, no personal jurisdiction in Illinois

14:45:15 12   because of a lack of sufficient connections to the forum

14:45:19 13   state, that underscored the fact that there was no violation

14:45:24 14   occurring in the state.  So again, we have that same outlier

14:45:30 15   fact pattern here, not just with respect to the allegations

14:45:34 16   in the complaint, but the procedural posturing as well.

14:45:38 17           We also have a prior jurisdictional finding from

14:45:43 18   the Illinois court finding that there were no accounts

14:45:48 19   related to the allegations that were directed at Illinois or

14:45:52 20   occurred in Illinois.  And Your Honor, I think this falls

14:45:56 21   squarely within what Judge Stark analyzed and concluded in

14:46:02 22   *McGoveran*.  I think the same outcome should apply here.  And

14:46:06 23   I'll pause there to see if you have any questions.

14:46:09 24           THE COURT:  Counsel, I think I understand your

14:46:11 25   argument.  All right.  Anything else or should I ask the

14:46:19 1   plaintiffs for a response?

14:46:25 2            MR. SOMVICHIAN:  Nothing from me, Your Honor,

14:46:27 3   unless you have questions.

14:46:28 4            THE COURT:  No.  So let me understand, then,

14:46:32 5   from the plaintiffs, how is this case not just like Judge

14:46:38 6   Stark in *McGoveran v. Amazon Web Search*?

14:46:43 7            MR. TIEVSKY:  Thank you, Your Honor.  This is

14:46:44 8   Alexander Tievsky for the plaintiffs.

14:46:48 9            I think that the -- taking a little bit of a

14:46:52 10  step back here and looking at where the *McGoveran* decision

14:47:00 11  misunderstood a point of Illinois law --

14:47:03 12           THE COURT:  Okay, but wait a second.  Wait a

14:47:06 13  second.  Wait.  Wait.  I'll let you do that, but then when

14:47:10 14  you say that, I guess I need to understand, if I don't think

14:47:15 15  that Judge Stark misunderstood the law, if I agree with his

14:47:20 16  reasoning, then do you agree that I need to dismiss this

14:47:23 17  case?

14:47:24 18           MR. TIEVSKY:  You know, reading the *McGoveran*

14:47:31 19  decision, it is difficult to say that if the logic in that

14:47:36 20  decision is followed that this case is -- there are some

14:47:39 21  differences and it is worth discussing them --

14:47:42 22           THE COURT:  I'm sorry, I didn't quite

14:47:46 23  understand.  You kind of cut off your sentence.  I don't

14:47:46 24  understand what you just said.  If I agree with Judge Stark,

14:47:52 25  with his reasoning, then is this dismissal warranted?  I

14:47:57  1      didn't understand your answer.  Sorry.

14:47:59  2               MR. TIEVSKY:  The answer to that question is no.

14:48:01  3      And the reason is that there are allegations in the

14:48:04  4      complaint here that were not present in *McGoveran* with

14:48:09  5      respect to Illinois.  The biggest one of those is the

14:48:11  6      presence of an Illinois base venture capital company that is

14:48:16  7      the one that facilitated this transaction.  In other words

14:48:21  8      --

14:48:21  9               THE COURT:  Wait, tell me -- wait, wait, wait,

14:48:24 10      hold on.  Sorry, I'm trying to follow you.  Point me to what

14:48:28 11      paragraph you're talking about that you say alleged

14:48:34 12      something different.  So what paragraph should I be looking

14:48:37 13      at?

14:48:38 14               MR. TIEVSKY:  We're looking at paragraph 38 in

14:48:41 15      the briefing and following.

14:48:45 16               THE COURT:  Hold on.  Let me get there.  Okay.

14:49:05 17      And so we see at paragraph 38 the way that the defendant

14:49:10 18      here got these photos at all and was able to then extract

14:49:16 19      the biometric data is that for the purpose, for the exact

14:49:21 20      purpose of doing this, for extracting the biometric data and

14:49:26 21      profiting from it which is against the law, one of

14:49:30 22      Clarifai's main investors which is based in Illinois, in

14:49:35 23      Chicago, facilitated this transfer of information.  The

14:49:39 24      entire transaction itself has this very close Illinois nexus

14:49:44 25      that was entirely absent from the *McGoveran* case.  So if the

14:49:49 1    Court is looking for a factual distinction between the two

14:49:52 2    cases, this is an enormous one.

14:50:00 3                    THE COURT:  All right.  Keep going.

14:50:02 4                    MR. TIEVSKY:  So, you know, so yes, if, you

14:50:07 5    know, as the defendant encourages, the Court ignores one of

14:50:11 6    the major Illinois connections here that is pleaded, it is

14:50:15 7    the same as *McGoveran,* but --

14:50:17 8                    THE COURT:  Let me just understand.  This

14:50:19 9    company that you're talking about, Corazon Capital, that's a

14:50:24 10   third party, right?

14:50:25 11                   MR. TIEVSKY:  It is a third party but with a

14:50:27 12   close connection, that is -- so these pictures came from an

14:50:32 13   app OKCupid --

14:50:34 14                   THE COURT:  I'm sorry, why is that imputed to

14:50:38 15   Clarifai?

14:50:39 16                   MR. TIEVSKY:  Because the way that Clarifai got

14:50:44 17   these pictures from OKCupid is that there is an individual

14:50:50 18   who is a founder of this Chicago-based venture capital firm

14:50:55 19   who also tends to be one of the founders of OKCupid.  And

14:51:01 20   that --

14:51:01 21                   THE COURT:  But did he do anything in Illinois?

14:51:04 22                   MR. TIEVSKY:  Yes.  He used his company, Corazon

14:51:14 23   Capital which is based right here in Chicago to make this

14:51:18 24   transaction happen, to make this transfer of data from

14:51:24 25   otherwise unrelated companies, OKCupid and Clarifai, to make

14:51:30 1  that happen, that was coordinated through this Chicago-based

14:51:36 2  company.

14:51:39 3          THE COURT:  Okay.  I'm looking at paragraph 38,

14:51:42 4  it says, "Clarifai first gained access to those profile

14:51:48 5  photographs through one of clarified investors, Corazon

14:51:53 6  Capital, a Chicago-based capital group launched by OKCupid

14:51:59 7  founders.  Corazon makes money when the companies that it

14:52:02 8  invest in succeed, thus venture capital firms like Corazon

14:52:07 9  provide assets to startups for pecuniary reasons, not

14:52:12 10 charitable ones."  So the only Illinois connection there is

14:52:16 11 that Corazon Capital is based in Chicago, right, that's the

14:52:22 12 Illinois connection?

14:52:24 13         MR. TIEVSKY:  The Illinois connection is that in

14:52:26 14 the following paragraph, what we allege is that the

14:52:30 15 co-founder of Corazon provided the database of pictures from

14:52:37 16 OKCupid to Clarifai as part of -- as part of Corazon's

14:52:45 17 investment in Clarifai.  The whole transaction was

14:52:54 18 facilitated through this, through this Illinois company.  I

14:52:59 19 don't think that that can just be --

14:53:02 20         THE COURT:  So the Northern District of Illinois

14:53:05 21 courts that addressed this case before with respect to

14:53:08 22 personal jurisdiction didn't seem to think that that was

14:53:12 23 enough of a hook for Illinois to have jurisdiction over

14:53:12 24 Clarifai, right?

14:53:17 25         MR. TIEVSKY:  Your Honor, I don't recall if that

14:53:21 1   fact was discussed specifically in that case.

14:53:26 2             THE COURT:  It was.  It was, wasn't it?  Weren't

14:53:30 3   you involved in that case?

14:53:31 4             MR. TIEVSKY:  I was not, no.  We were --

14:53:35 5             THE COURT:  Did you read it?

14:53:36 6             MR. TIEVSKY:  I did.

14:53:37 7             THE COURT:  Did you read that case?

14:53:39 8             MR. TIEVSKY:  As I say, I don't recall off the

14:53:42 9   top of my head, but I will say that the extraterritoriality

14:53:47 10  analysis and the personal jurisdiction analysis are not

14:53:50 11  identical.  And particularly, it's particularly important

14:53:54 12  that the Illinois extraterritoriality analysis set forth in

14:54:00 13  *Avery* is never intended to be applied across the board to

14:54:05 14  any Illinois statute whatsoever, it doesn't say that --

14:54:08 15            THE COURT:  But if I assume that the

14:54:10 16  extraterritoriality, for example, I have to look and see

14:54:17 17  whether the conduct at issue here, defendant's conduct

14:54:24 18  rather than a third party, defendant's conduct occurred

14:54:27 19  primarily and substantially in Illinois; right?

14:54:31 20            MR. TIEVSKY:  No, that's not the correct

14:54:33 21  statement of the law, Your Honor.  And I can explain that.

14:54:36 22  In fact, in the *Avery* case, an allegation in that case was

14:54:42 23  about a large scale scheme run by an insurance company.  The

14:54:46 24  allegations in that case was that the entire fraudulent

14:54:51 25  scheme was concocted and disseminated from the defendant's

14:54:56 1    office in Illinois.  And the court said no, that's not good

14:54:59 2    enough.  That's not what you should be looking at in this

14:55:02 3    particular case.  And that's based on a detailed examination

14:55:06 4    of the statute that was at issue there, the Consumer Fraud

14:55:10 5    Act.  And the decision there was that for the purposes of

14:55:12 6    the Consumer Fraud Act, again, based on the language of that

14:55:17 7    statute and the purposes of that particular statute which

14:55:20 8    was discussed at great length, that in that case you got to

14:55:24 9    look at the specific transaction involved and the way that

14:55:28 10   that transaction is connected to the state of Illinois.

14:55:33 11          But that doesn't just -- you can't just replace

14:55:37 12   the words Consumer Fraud Act with Biometric Information

14:55:42 13   Privacy Act in *Avery* and say that that is a correct

14:55:44 14   statement of Illinois extraterritoriality law.  It's simply

14:55:49 15   not.  The *Avery* decision doesn't support that conclusion.

14:55:52 16   If that were true there would be no need for the Illinois

14:55:55 17   Supreme Court to spend pages and pages and pages discussing

14:55:59 18   the Consumer Fraud Act specifically.

14:56:02 19          And so when you look at BIPA itself and when you

14:56:05 20   look at its preamble, its purposes both as stated in the

14:56:10 21   statute itself and as explained by the Illinois Supreme

14:56:14 22   Court in *Rosenbaum*, the idea that in order for BIPA to

14:56:18 23   apply, the collection of biometric information data has to

14:56:22 24   specifically take place in Illinois or that the defendant

14:56:26 25   has to be acting in Illinois, it simply doesn't add up.  It

14:56:32 1   wouldn't make any sense.  The purpose of BIPA for the

14:56:36 2   consumer to be able to say no to collection of or profit

14:56:40 3   from their biometric information, it wouldn't be able to

14:56:46 4   effect that purpose.

14:56:47 5          So the harm here that the Illinois Supreme Court

14:56:50 6   identified, and I'm quoting from *Rosenbaum* here, "the

14:56:54 7   consumers' right to control their biometric information by

14:56:58 8   requiring notice before collection and giving them the power

14:57:01 9   to say no by withholding consent."

14:57:07 10         So when you look at whether something happened

14:57:09 11  extraterritorially, one of the important things to look at

14:57:12 12  is where the harm takes place.  And that harm in this case

14:57:16 13  plainly took place in Illinois where the people who lost

14:57:19 14  their right to say no are sitting.

14:57:25 15         THE COURT:  So I'm sorry, it sounds to me like

14:57:29 16  you're saying that every court that has read this has

14:57:35 17  misunderstood *Avery*, including the Northern District of

14:57:38 18  Illinois.

14:57:40 19         MR. TIEVSKY:  A number of courts have

14:57:42 20  misunderstood *Avery* in this context.  And I will say not

14:57:47 21  every court has.  One court that did understand it and that

14:57:50 22  we cite here was the Circuit Court of Cook County in

14:57:54 23  *American Civil Liberties Union v. Clearview* --

14:57:58 24         THE COURT:  But hold on, hold on.  How can you

14:58:01 25  possibly square that with the more recent case from that

14:58:05 1    court, *Wilk v. Brainshark* case which seemed to cite just the

14:58:14 2    opposite of what you're saying the *ACLU v. Clearview* case

14:58:19 3    said.  How do you square those two?

14:58:22 4            MR. TIEVSKY:  The Circuit Court and the Court of

14:58:27 5    Cook County may not always agree with each other.  I would

14:58:30 6    say that Judge Meyerson's detailed explanation of the matter

14:58:34 7    in that Clearview case which was the case that pictures were

14:58:38 8    scraped just from the internet indiscriminately, it wasn't

14:58:42 9    even the Illinois connection that we alleged here.  In that

14:58:45 10   case, the court determined that the extraterritoriality

14:58:48 11   provisions of BIPA at least at the pleading stage, that it

14:58:54 12   didn't warrant -- that the case could continue based on I

14:59:01 13   believe the facts that the plaintiffs are Illinois

14:59:04 14   residents, that their pictures appeared on the internet and

14:59:07 15   that this company pulled pictures off the internet and

14:59:11 16   scraped the biometric data from them.

14:59:13 17           So to say that every court has misinterpreted or

14:59:18 18   misunderstood *Avery* is not correct.  I would say that Judge

14:59:21 19   Meyerson got it right there, and that in the Facebook case,

14:59:24 20   the Ninth Circuit got it right as well.  And quoting from

14:59:28 21   the Ninth Circuit case here, "It is reasonable to infer the

14:59:32 22   General Assembly contemplated BIPA application to

14:59:36 23   individuals who are located in Illinois even if some

14:59:39 24   relevant activities occurred outside the state."

14:59:41 25           THE COURT:  Some relative activities?

14:59:44  1          MR. TIEVSKY:  Some relevant activities occurred

14:59:47  2    outside the state.

14:59:47  3          THE COURT:  Meaning that -- that doesn't exclude

14:59:51  4    that most of the -- you know, a big chunk of the activity

14:59:57  5    occurred in Illinois, right?

14:59:59  6          MR. TIEVSKY:  In the *Facebook* case?

15:00:02  7          THE COURT:  Yes.  I mean, it can still be there

15:00:07  8    even if something happens outside of Illinois, that's very

15:00:10  9    different from saying that you don't really need anything in

15:00:13 10    Illinois.

15:00:14 11          MR. TIEVSKY:  In the *Facebook* case what occurred

15:00:16 12    in Illinois was not particularly different from what

15:00:19 13    occurred in Illinois here.  In the *Facebook* case what hopped

15:00:23 14    in Illinois is the plaintiff took a picture of themselves

15:00:28 15    with their phone and unloaded it to an app which from the

15:00:29 16    perspective of the plaintiffs in this case is not really any

15:00:32 17    different.  It's the same thing.  It's difficult I guess for

15:00:36 18    me to see how one person taking a picture of himself and

15:00:40 19    uploading it to an app has no cause of action and another

15:00:42 20    one who takes pictures of themselves and uploads it to an

15:00:50 21    app does have a cause of action for what is the effectively

15:00:52 22    the same thing, collection of biometric data without

15:00:55 23    consent.

15:00:59 24          THE COURT:  All right.  Anything else?

15:01:02 25          MR. TIEVSKY:  As I said, I also want to go back

15:01:11 1    to the idea that we need to be focused here on defendant's

15:01:15 2    conduct.  *Avery* says the exact opposite of that.  I'm

15:01:19 3    quoting from *Avery* here.  There are basically -- there are

15:01:24 4    virtually no circumstances relating to the disputed claims

15:01:27 5    and practices at issue which occurred in Illinois for these

15:01:31 6    plaintiffs who are not Illinois residents.  The appellant

15:01:35 7    court's statement that fraud disseminated from State Farm's

15:01:37 8    headquarters is insufficient.  In other words, finding the

15:01:45 9    defendants have all of their practices in Illinois is not

15:01:48 10   what the *Avery* analysis or the extraterritoriality analysis

15:01:53 11   is designed to do.  The extraterritoriality analysis is

15:01:57 12   designed to prevent nonresidents of Illinois from bringing

15:02:01 13   their non-Illinois claims into the state or under the

15:02:04 14   state's law.  But when you have Illinois plaintiffs trying

15:02:07 15   to assert their fundamental Illinois statutory rights that

15:02:14 16   the Illinois Supreme Court has determined are extremely

15:02:18 17   important, the fact that the data processing or some of the

15:02:21 18   defendants are doing that outside Illinois, that is not or

15:02:27 19   should not be in consideration.

15:02:31 20           THE COURT:  Okay.  Defendant, do you want to

15:02:36 21   respond?

15:02:37 22           MR. SOMVICHIAN:  Yes, Your Honor.  Three very

15:02:41 23   can quick points.  On this issue around Corazon and this

15:02:42 24   individual Max Krohn, I don't agree with counsel's

15:02:54 25   characterization of what is alleged in the complaint.  And

15:02:57 1    **if you actually look at what is stated factually in**

15:03:01 2    **paragraphs 38 and 39, it does not say that Corazon entity**

15:03:08 3    **enabled the transfer of data.  Paragraph 39 refers to Max**

15:03:14 4    **Krohn and some actions that he took.  It doesn't allege that**

15:03:18 5    **he did those things on behalf of Corazon, that he was acting**

15:03:24 6    **on behalf of the company.  It doesn't allege that any of the**

15:03:28 7    **acts constituting the transfer of the database occurred in**

15:03:34 8    **Illinois or any discussions about transferring the database**

15:03:37 9    **occurred in Illinois, so there is really no connection in**

15:03:42 10    **paragraphs 38 and 39 other than the happenstance that**

15:03:48 11    **Corazon happens to be based in Chicago, I don't think that**

15:03:50 12    **moves the needle.**

15:03:54 13         **Second the idea that the plaintiffs' residence**

15:03:56 14    **is enough to show a violation occurring in Illinois because**

15:04:00 15    **they felt or allegedly suffered harm there, you could say**

15:04:06 16    **that in any case where the plaintiff resides in Illinois,**

15:04:11 17    **really regardless of what the type of cause of action is,**

15:04:18 18    **you can always say that the harm was suffered in Illinois by**

15:04:21 19    **virtue of the facts that the plaintiff resides there, but**

15:04:24 20    **that's not really alleging anything other than their**

15:04:27 21    **residence.**

15:04:28 22         **So it comes around full circle to the rule**

15:04:30 23    **that's acknowledged in *McGoveran* and other cases that we**

15:04:35 24    **have cited in our reply brief at page 3, all acknowledging**

15:04:35 25    **that a plaintiff's residence in Illinois is not enough, and**

15:04:42 1    the fact that they resided there and claim that they

15:04:45 2    suffered harm there doesn't change the analysis, it's really

15:04:50 3    stating nothing more than the fact of their residence.

15:04:54 4              Last point that I'll make is this notion that

15:05:02 5    this case is just like the *Facebook* case, and why should

15:05:07 6    there be a different result here.

15:05:11 7              Your Honor, in that circumstance that counsel

15:05:13 8    described when individuals in Illinois are uploading photos

15:05:17 9    to Facebook, in that case they were interacting directly

15:05:21 10   with the defendant.  The defendant made an interactive

15:05:25 11   website available to Illinois residents that enabled them to

15:05:29 12   directly upload photos to the defendant.  And if anything,

15:05:33 13   that underscores why the circumstances here are so

15:05:39 14   different.  There was no direct interaction like that.  So I

15:05:41 15   do think this case is squarely governed by *McGoveran*.  I

15:05:46 16   don't see a basis for different results.  And we would ask

15:05:49 17   you to dismiss this case on extraterritoriality grounds for

15:05:54 18   the same reasons that Judge Stark found.

15:05:58 19              THE COURT:  Okay.  Just give me a second to take

15:06:02 20   a look at something.

15:06:02 21              Okay.  Thank you for the arguments today.

15:07:58 22   Presently before me is Defendant's motion to dismiss the

15:08:02 23   First Amended Complaint under Rule 12(b)(6).  Defendant's

15:08:04 24   motion is based on the argument that the Illinois Biometric

15:08:08 25   Information Privacy Act, or BIPA, does not have

15:08:12 1    extraterritorial reach and the First Amended Complaint fails

15:08:15 2    to adequately plead that the complained of conduct occurred

15:08:20 3    primarily and substantially in Illinois.  I agree and will

15:08:23 4    grant Defendant's motion.

15:08:25 5            Plaintiffs Jordan Stein and Deborah Goodman

15:08:29 6    accused Defendant Clarifai of violating BIPA by improperly

15:08:31 7    obtaining and then using Plaintiffs' OKCupid pictures to

15:08:35 8    train facial recognition software without Plaintiffs'

15:08:39 9    consent or knowledge.  The parties disagree over whether

15:08:42 10   BIPA extends to extraterritorial conduct which is the first

15:08:46 11   issue I must address in evaluating Defendant's motion.

15:08:48 12   Ultimately I agree with Defendant that BIPA does not have

15:08:53 13   extraterritorial reach and the only way for Defendant's

15:08:55 14   conduct to be actionable under the statute is if the

15:08:57 15   offending conduct occurred primarily and substantially in

15:09:00 16   Illinois.

15:09:01 17           In *Avery v. State Farm Mutual Auto Insurance*

15:09:05 18   *Company*, 835 N.E.2d 801 at page 852, the Illinois Supreme

15:09:11 19   Court in 2005 made clear that under Illinois law a statute

15:09:20 20   is without extraterritorial effect unless a clear intent in

15:09:22 21   this respect appears from the express provisions of the

15:09:22 22   statute.  In looking at the statute, I see no express

15:09:32 23   provision making clear that the legislative intent was to

15:09:37 24   give the BIPA extraterritorial reach.  This conclusion is in

15:09:41 25   line with a number of cases that have addressed the same

issue including recent cases from the Northern District of Illinois and here in Delaware, for example, *Monroy v. Shutterfly, Inc.*, No. 16-10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) in Illinois from September of 2017, and here in Delaware, Judge Stark's decision in *McGoveran v. Amazon Web Servs.* from last September.

Plaintiffs cite to the 2021 *American Civil Liberties Union v. Clearview AI, Inc.* case from the Circuit Court of Illinois to suggest that BIPA may have extraterritorial effect. But that case does not squarely hold that the BIPA has extraterritorial reach and it is hard to reconcile that with the more recent cases like *Wilk v. Brainshark* from the Northern District of Illinois in September of this year finding the opposite. Ultimately, I will follow the same path as the Northern District of Illinois cases and Judge Stark from last year in finding that the BIPA does not have extraterritorial reach. Thus any purported BIPA violation on the part of Defendant must have occurred in Illinois.

Under the relevant test from *Avery*, the question is whether the Defendant's conduct occurred primarily and substantially in Illinois. Defendant argues that the First Amended Complaint must be dismissed because there are no allegations that BIPA violations occurred primarily and substantially in Illinois or that any violations at all

15:11:27 1   occurred in Illinois, and I agree.  The Illinois-related

15:11:31 2   conduct that is alleged in the First Amended Complaint is

15:11:34 3   only conduct that Plaintiffs engaged in.  Primarily what is

15:11:38 4   alleged is that Plaintiffs are both residents of Illinois in

15:11:43 5   paragraphs 9 and 10 of the First Amended Complaint,

15:11:46 6   Plaintiffs were residents of Illinois when they joined

15:11:49 7   OKCupid, that's also in those paragraphs.  And Plaintiffs

15:11:53 8   uploaded their pictures to OKCupid from computers and local

15:11:58 9   devices in Illinois.  That's in paragraph 58, 59 and 72.

15:12:03 10          As to Defendant's conduct, the First Amended

15:12:07 11  Complaint really only alleges that Clarifai captured

15:12:11 12  biometric identifiers from Plaintiffs' photographs and used

15:12:13 13  their facial templates to train recognition technology.

15:12:17 14  That's in paragraph 63, 64 and 75 through 77.  Plaintiffs

15:12:22 15  never alleged that Clarifai performed any of this conduct in

15:12:25 16  Illinois.  In fact, there is no specific conduct alleged

15:12:27 17  that directly connects Clarifai's conduct to Illinois in any

15:12:31 18  way.  The closest that Plaintiffs come is by alleging that

15:12:34 19  one of Clarifai's investors, Corazon Capital, is based in

15:12:39 20  Chicago and one of Corazon's founders provided the OKCupid

15:12:44 21  photographs.  That's in paragraphs 38 and 39, which we

15:12:48 22  discussed today.  These allegations do not allow the Court

15:12:51 23  to plausibly infer that Clarifai committed any BIPA

15:12:54 24  violations through conduct performed primarily or

15:12:58 25  substantially in Illinois.

Ultimately, I find that this case is analogous to the *McGoveran* case before Judge Stark last year.  There plaintiffs sued Pindrop and Amazon Web Services for collecting voice audio from Illinois callers and purportedly using biometric data from that audio in violation of BIPA.  Defendants moved to dismiss on the grounds that there were no allegations that any BIPA violation occurred in Illinois.  Judge Stark agreed finding that at best, "Plaintiffs' concrete allegations about the case's connection to Illinois are nothing more than repeated statements phrased three different ways about plaintiffs' residency."  That was at page 4 of the Westlaw version.  Defendants maintained data centers in states other than Illinois and plaintiffs had not alleged otherwise.  At bottom, the *McGoveran* plaintiffs merely alleged they were Illinois residents, that their phone calls originated from Illinois from Illinois phone numbers.

The same is true here, generally - the Plaintiffs' allegations focus on where Plaintiffs reside and where they uploaded the pictures from.  There is nothing about Clarifai obtaining the pictures through conduct that it performed in Illinois, or that any of Clarifai's Illinois based conduct violated the BIPA, or even that Clarifai had the presence in Illinois.  There are no allegations from which I can plausibly infer that Clarifai performed any

15:14:23 1    actionable conduct primarily or substantially in Illinois.

15:14:27 2           And as Judge Stark did in *McGoveran,* I find it

15:14:30 3    relevant that the Northern District of Illinois dismissed

15:14:33 4    the prior case between these parties because personal

15:14:36 5    jurisdiction over defendant was lacking in Illinois.   In

15:14:40 6    *McGoveran* there had been a prior lawsuit between the parties

15:14:44 7    in the Northern District of Illinois that had been dismissed

15:14:47 8    under Rule 12(b)(2) because there weren't sufficient

15:14:50 9    connections between defendants and Illinois.   Judge Stark

15:14:53 10   found that dismissal further underscored the weak connection

15:14:57 11   between plaintiffs' allegations in Illinois.   And I find the

15:14:59 12   same is true here.   The previous suit between the parties in

15:15:02 13   the Northern District of Illinois was dismissed on the very

15:15:06 14   same grounds as the previous suit in *McGoveran,* lack of

15:15:09 15   personal jurisdiction over the accused defendant.

15:15:11 16   Specifically, the Court found that there was no evidence

15:15:14 17   that Clarifai purposefully directed suit-related activities

15:15:18 18   at Illinois such that it should be subject to specific

15:15:21 19   personal jurisdiction.   That's from 526 F. Supp 3d 239 at

15:15:30 20   pages 344 and 45.   Instead, "the only alleged tie to

15:15:33 21   Illinois with respect to Clarifai's acquisition of the

15:15:38 22   photographs is through Corazon, a Chicago-based venture

15:15:42 23   capital fund ...[but] Clarifai's conduct with Illinois must

15:15:45 24   come from its suit-related activity in the forum state, not

15:15:48 25   from the activity of a third party."   The Court also found

15:15:53 1    that despite selling to two Illinois customers, there was

15:15:57 2    not sufficient evidence to show that Clarifai targeted its

15:16:01 3    facial recognition products to Illinois customers.  As such,

15:16:05 4    personal jurisdiction over Clarifai was lacking and the

15:16:08 5    complaint was dismissed.  This result is particularly

15:16:12 6    noteworthy because the parties engaged in jurisdictional

15:16:13 7    discovery before the motion to dismiss was decided.

15:16:16 8    Plaintiff did not appeal or otherwise try to amend the

15:16:20 9    Northern District of Illinois complaint - instead Plaintiff

15:16:22 10   just refiled the same case here.  I find this significant

15:16:25 11   because even after jurisdictional discovery, Plaintiffs

15:16:28 12   struggled to come forward with plausible allegations that

15:16:31 13   Clarifai has engaged in Illinois-related conduct that could

15:16:35 14   be subject to BIPA.

15:16:37 15         In sum, given that the First Amended Complaint

15:16:39 16   here fails to adequately allege that Defendant's purported

15:16:44 17   BIPA violations were based on conduct that primarily and

15:16:49 18   substantially occurred in Illinois, I am going to grant

15:16:53 19   Defendant's motion to dismiss.

15:16:54 20         So that is my ruling on the motion to dismiss.

15:17:02 21   Is there anything else that we need to address while we are

15:17:02 22   on the phone?

15:17:02 23         MR. TIEVSKY:  Yes, Your Honor, from the

15:17:11 24   Plaintiff, I would like to understand if the motion to

15:17:12 25   dismiss is with or without prejudice for relief.

15:17:17  1          THE COURT:  Well, I have not received any

15:17:19  2    requests to amend.  Plaintiffs didn't raise it in their

15:17:24  3    papers and you didn't ask me about that today.  Where did

15:17:26  4    you make that request to amend?

15:17:30  5          MR. TIEVSKY:  We have already amended our

15:17:32  6    complaint, so it is not in the motion.  To the extent that

15:17:37  7    the Court, you know, believes that we can plead additional

15:17:41  8    facts, we would like another chance to do so, or at least

15:17:44  9    the option to have that, but we will submit a written motion

15:17:48 10    to that effect if it is determined that we can plead

15:17:52 11    alternate facts.  I don't know that given the Court's

15:17:54 12    ruling.  I would have to look at it and see if that's even

15:17:57 13    possible.

15:17:58 14          THE COURT:  All right.  Well, I don't have

15:18:00 15    motions to amend pleadings.  So if you think that you can

15:18:06 16    adequately plead sufficient Illinois conduct on the part of

15:18:11 17    Defendants so as to come within the reach of BIPA, I suppose

15:18:15 18    you can follow my procedures and seek leave to amend.  That

15:18:20 19    is not a motion that is something where you have to call up

15:18:22 20    and submit, and you're going to have to submit to me your

15:18:26 21    proposed amendment with red lines so that we can look at

15:18:31 22    them.

15:18:31 23          So why don't you go and determine whether or not

15:18:34 24    you can plead that and then you can talk with the Defendants

15:18:37 25    and get back to me.  Any request for leave to amend, though,

15:18:44 1    would have to come within the next thirty days.

15:18:47 2                   Anything else?

15:18:50 3                   MR. TIEVSKY:  Nothing from the Plaintiff, Your

15:18:52 4    Honor.

15:18:52 5                   MR. SOMVICHIAN:  Nothing for Clarifai, Your

15:18:55 6    Honor.

15:18:55 7                   THE COURT:  All right.  Thank you, everyone.

15:18:56 8    Have a good holiday.

        9                   (Teleconference concluded at 3:18 p.m.)

       10

       11             I hereby certify the foregoing is a true and
              accurate transcript from my stenographic notes in the proceeding.
       12

       13                               /s/ Dale C. Hawkins
                                        Official Court Reporter
       14                               U.S. District Court

       15

       16

       17

       18

       19

       20

       21

       22

       23

       24

       25